IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

**MERLE AND PAULA ABRAMS, *et al.*,** )
                                            )
     **Plaintiffs,**                    )
                                            )
**v.**                                                           )     No. 3:03-CV-428
                                            )     (Phillips/Guyton)
**FIRST TENNESSEE BANK**            )
**NATIONAL ASSOCIATION, *et al.*,** )
                                            )
     **Defendants.**                 )

**MEMORANDUM AND OPINION**

Defendants, First Tennessee Bank National Association, First Tennessee National Corporation, and First Horizon Home Loan Corporation (collectively, the "First Tennessee defendants") have jointly moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. 336] with respect to the single remaining claim asserted against them based on their alleged violation of the Racketeering Influenced and Corrupt Organization Act ("RICO" or the "Act"). Defendant Dale Martin joins in First Tennessee defendants' dispositive motion [Doc. 339].[1] In their motion, the First Tennessee defendants argue that the plaintiffs cannot support key elements of their RICO claim. Plaintiffs have responded in opposition, and the First Tennessee defendants have replied, as well as submitted supplemental memorandum. For the reasons that follow, defendants' motions for summary judgments [Docs. 336 and 339] are **GRANTED**. Further, the summary

---

[1]For the sake of simplicity, defendant Dale Martin will not be mentioned specifically throughout the motion but assumed to be joining in the below arguments for summary judgment.

1

judgment motion of First Tennessee Bank National Association and First Horizon Home Loan Corporation [Doc. 459] as well as plaintiffs' motion to strike statement of material facts [Doc. 463] are **DENIED, as moot**.

I. **Summary of the Facts**

As the law requires, all disputed facts and inferences are resolved most favorably for the plaintiffs. The Court merely provides an abridged summary of facts for the purposes of this opinion.

Plaintiffs' claims arise from their purchase of real estate "vacation homes" from Deer Path Vacations, L.P. ("Deer Path"). Generally stated, developer Dan Stetson ("Stetson") had a "vision" to provide ministers a vacation resort; to furnish retirement homes to these clergy men and women; and to provide income to the ministers. It appears that Stetson represented that he planned to achieve this by allowing ministers to purchase cabins in the Deer Path development, with little or no money being paid by the ministers, and then lease the cabins from the ministers as overnight rentals to the public. The proceeds from the cabin rentals would be used to pay all costs and expenses associated with the ministers' ownership of the cabins. Further, it appears that Stetson stated that the cash flow would ultimately pay off the mortgages on the cabins. Stetson estimated and represented to the plaintiffs that the cabins would be paid off in approximately seven years. Then, the unencumbered cabins would belong to the ministers, who could either continue to rent

them for a profit or move into them. All of the plaintiffs in the instant matter purchased cabins.

Although plaintiffs' deposition testimony varies, the process of purchasing the lots and cabins involved the plaintiffs discussing their cabin purchase(s) with friends and family; participating in sales meetings given by Deer Path; taking tours of the Deer Path development with Deer Path employees; and/or meeting with Deer Path employees to discuss options, i.e. selecting cabins with furnishings and discussing the purchase price. Ultimately, all of the plaintiff purchasers would meet with J.W. Compton ("Compton"), who was First Tennessee defendants' loan officer on site at the Deer Path development. Compton would assist the cabin purchasers in obtaining loans to purchase their lots and cabins. Plaintiffs allege that Compton gave them certain representations that were favorable to developer Stetson, the Deer Path development, and conditions of the purchases.

Deposition testimony varies as to the process of the loan application; however, generally, a hand written loan application was completed to the extent possible. Once all of the information was obtained, a completed typed application was prepared. The typed application was signed by each plaintiff. It appears that, since the plaintiffs did not reside near the development, some or all of the plaintiffs executed written Limited Powers of Attorney empowering a Deer Path employee to execute the loan documents necessary to secure their cabins. Many of the interactions between plaintiffs and Compton regarding the status and completion of the loans were though mailing and/or by phone conversations.

Plaintiffs did not raise any issues or otherwise complain about the loan process, loan application, and/or construction or permanent loans before or at the closing.

Initially, Deer Path was able to uphold its obligation. It would appear that enough cash flow was generated to pay plaintiffs' mortgage payments, property taxes, insurance, utilities, and other costs associated with ownership of the cabins. However, in the summer of 2002, Deer Path began to experience extreme financial difficulties. As a result, Deer Path could not satisfy its obligations under the lease agreements. Indeed, Deer Path discontinued mortgage payments. In late fall of 2002, Deer Path filed for bankruptcy. Its efforts to reorganize were unsuccessful, and Deer Path ceased operations in December of 2002. The plaintiffs, unable to pay their mortgage and loan obligations, had their cabins foreclosed by various lenders thereafter.

Plaintiffs filed suit against the First Tennessee defendants based on various legal grounds. All of plaintiffs' claims have been previously remanded to Jefferson County Circuit Court with the exception of plaintiffs' claims based upon alleged RICO violations.[2] Plaintiffs essentially allege that the RICO defendant "persons" are liable because (1) the properties purchased were worth substantially less than what the plaintiffs obligated themselves for financially; (2) Deer Path was not able to honor the leases entered into with plaintiffs, which would cover plaintiffs' financial obligations, and (3) the First Tennessee

---

[2] The state law claims remanded to the Jefferson County Circuit Court are based on violations of the Tennessee Consumer Protection Act, intentional and negligent misrepresentation, civil conspiracy, breach of fiduciary duty, negligence, and appraiser and surveyor liability.

defendants were aware of facts that, if made known to the plaintiffs, would have caused them not to purchase lots, build cabins, and make loans for which they may be obligated.[3] Plaintiffs claim that the First Tennessee defendants, and the other RICO defendants, together committed criminal violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Although disputed by defendants, plaintiffs claim that they relied upon the representations made by the First Tennessee defendants; that they are subject to having had adverse credit reported; and that they are vulnerable to large deficiency judgements.

In response, the First Tennessee defendants argue that the plaintiffs do not have evidence to support standing under § 1964(c) and that, even if this Court were to find standing under § 1964(c), the facts and evidence do not support a violation of § 1962. The First Tennessee defendants assert that simply conspiring to commit fraud, in the absence of an organization that would allow the defendants to function as a racketeering organization for other purposes, is not enough to establish an "enterprise." Also, the First Tennessee defendants assert that to sustain a RICO claim under the law, plaintiffs must show that they relied upon defendants' representations. In this respect, the First Tennessee defendants contend that no false representations were made by them, nor did the First Tennessee defendants have any knowledge that the representations were false at the time they were made. The First Tennessee defendants contend that statements made were either opinions, puffing, and/or were accurate. Also, the First Tennessee

---

[3]Plaintiffs allege that the First Tennessee defendants withheld information from the plaintiffs as to the precarious financial condition of Deer Path and took "affirmative actions" to conceal the shaky condition of Deer Path. For example, plaintiffs assert that the First Tennessee defendants did not disclose that the First Tennessee defendants extended an additional loan to Deer Path, that they sought out another permanent lender, and that they refused to provide any more permanent loans.

5

defendants assert that every statement made by Compton was previously stated by Stetson, Stetson's employees, or other plaintiffs and friends. Additionally, the First Tennessee defendants argue that plaintiffs cannot establish that their reliance was *reasonable* in that representations of a "no risk" investment inherently cannot be justifiably relied upon.[4]

## II.  Law Applicable to Rule 56 of the Federal Rules of Civil Procedure

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with

---

[4] Although the First Tennessee defendants have asserted other arguments in support of dismissal, it appears that the above arguments are the main thrust of the First Tennessee defendants' dispositive motion.

6

some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III. <u>Motion for Summary Judgment and Applicable Law</u>

Plaintiffs assert a claim under RICO, a federal statute that affords a civil remedy to an individual who is injured by virtue of certain types of unlawful activity. RICO provides in relevant part as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity .... To establish a violation of § 1962(c), plaintiffs must prove injury caused by a person who conducts the affairs of an enterprise through a pattern of racketeering activity.

18 U.S.C. § 1962(c); *Miller v. Norfolk Southern Ry. Co.*, 183 F.Supp.2d 996, 1001 (N.D. Ohio 2002). Thus, to state a RICO claim, the plaintiffs must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). In order to establish standing under 18 U.S.C. § 1964(c), a plaintiff to prove the following elements: (1) a violation of § 1962, (2) an injury to plaintiff's business or property, and (3) that plaintiff's injury was caused by a RICO violation. *See McGee v. City of Warrenville Heights*,

7

16 F.Supp.2d 837, 847 (N.D.Ohio 1998). Additionally, plaintiffs must plead (1) two or more predicate offenses; (2) the existence of an "enterprise;" (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) resulting injury to business or property. *Miller*, 183 F.Supp.2d at 1001; *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d. 696, 699 (6th Cir. 2000).

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The requirements of an "enterprise" can be broken down into three pleading requirements: (1) identifying the enterprise; (2) demonstrating that the enterprise is distinct from the RICO "person," i.e., defendant; and (3) pleading that the RICO person participated in the operation or management of the enterprise. *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 953 (N.D. Ill. 1998). Indeed, it is well-established that the entity constituting the enterprise must be a separate entity from the "person" committing harm under RICO. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989). "[T]he hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing." *See VanDenBroeck*, 210 F.3d at 699. "[S]imply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *Id.* In fact, the elements to establish a RICO enterprise are interpreted to require a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach. *Id.* at 700. Moreover,

establishing that each member of a group carries on activities distinct from a pattern of alleged racketeering is insufficient; the group as a whole must have a common link other than a simple scheme to defraud. *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815-16 (8th Cir. 1992).

In the subject case, plaintiffs have not asserted facts to support a finding that the alleged enterprise existed separately and apart from the business actions of the defendants. Simply conspiring to commit fraud, in the absence of an organization that would allow defendants to function as a racketeering organization for other purposes, is not enough to establish an enterprise. Further, the plaintiffs have failed to prove any structure, hierarchy, or chain of command evincing a RICO enterprise. The only common factor that linked all these parties together and defined them as a distinct group was their direct or indirect participation in the alleged scheme of Stetson to defraud the plaintiffs. Although it is true that each defendant named by plaintiffs carried on other activities, these other activities were not in furtherance of the common or shared purpose of an enterprise and, thus, were not acts of an enterprise. The plaintiffs, consequently, have failed to prove the existence of an enterprise that extended beyond defendants' minimal association. *See* Memo. Op.*, Miller v. Farragut Mortgage Group*, E.D. Tenn., Case No. 3:03-cv-557. Because plaintiffs have failed to state a RICO claim with reference to the above issue, the Court will not address the remaining arguments of the defendants.

## IV. CONCLUSION

For the reasons hereinabove set forth, defendants' motions for summary judgments [Doc.s 336 and 339] are **GRANTED**, and defendants' motion for summary judgment [Doc. 459] and plaintiffs' motion to strike statement of material facts [Doc. 463] are **DENIED, as moot**. As it appears that the remaining defendants have not filed dispositive motions, this case will proceed to trial with the remaining parties.

**IT IS SO ORDERED.**

        **ENTER:**

        s/Thomas W. Phillips
        UNITED STATES DISTRICT JUDGE